PARAGOULD & MEMPHIS RAILROAD COMPANY *v.* SMITH.

Opinion delivered January 17, 1910.

1. EVIDENCE—SUFFICIENCY OF CIRCUMSTANTIAL EVIDENCE.—An issue may be established by all the facts and circumstances proved in a cause, and the falsity of testimony may be established by evidence of the same character. (Page 227.)

2. PAYMENTS—APPLICATION.—Where there are two accounts between parties, and a payment is made which could be applied to either, the application of such payment is determined by the intention of the parties. (Page 227.)

Appeal from Mississippi Circuit Court, Chickasawba District; *Frank Smith,* Judge; affirmed.

*J. H. Bradley* and *M. P. Huddleston,* for appellant.

A new trial should be granted where there is no evidence to support the verdict, or where it fails in some material link. The jury will not be allowed to supply such missing link by inference or presumption from other facts unless they be legitimate and fair. 11 Ark. 630; 34 Ark. 632. Whether or not the evidence in a case possesses any probative value is a question of law and not of fact, and the appellate court will set aside a

judgment when the record shows no substantial evidence in support of the verdict. 122 Mo. App. 213.

*T. A. Turner* and *Taylor & Little,* for appellee.

Where the debtor directs the application of payments, he cannot afterwards divert or change the application without the consent of the creditor. 30 Cyc. 1231-1233; 2 Am. & Eng. Enc. of L. 435; 32 Ark. 665. Under the evidence it would have been unreasonable for the jury to have returned any other verdict.

FRAUENTHAL, J. This was an action instituted by D. A. Smith, who was the plaintiff below, to recover the sum of $2,110 for work done for the defendant. The defendant pleaded payment.

The defendant by written contract employed the plaintiff to clear and grade 187 stations of its right-of-way, and agreed to pay him therefor $10 per station; and later it employed him to make 2,000 ties, for which it agreed to pay 12 cents per tie. It was admitted that the plaintiff had performed all this work. The defendant was engaged in building to its main line of railroad a spur track which extended to a large body of timber land which was owned by the Decatur Egg Case Company, a foreign coroporation with its domicil at Decatur, Indiana. A short time after entering into the above contracts with the defendant, the plaintiff entered into a contract with said Decatur Egg Case Company by which he agreed to do logging for that corporation, and under said contract performed work for it. The two corporations were separate and distinct, but, by arrangements made between them, the Decatur Egg Case Company made payments to the plaintiff for the defendant upon the work done by him for defendant; and it also made payments from time to time to plaintiff for the work done by him for this latter corporation upon said logging contract. The plaintiff admitted that he had received from the defendant through the Decatur Egg Case Company the sum of $1,800. This sum was paid by three drafts. The first two drafts were for $500 each, and were signed by the Decatur Egg Case Company, and made payable to the order of plaintiff, and were drawn on the Decatur Egg Case Company at Decatur, Indiana. In one of the drafts it was written that it was given for cutting right of way, and in the other that it was given for building spur. The third draft was executed for $1,400, and was also signed by the Decatur

Egg Case Company and drawn on the same company. It, however, stated that $800 of the draft was paid on the account of the switch contract, and $600 on the account of the logging contract. A few days after this the Decatur Egg Case Company gave to the plaintiff a draft on the same drawee for $382.80. This draft was made payable to the order of the Crescent Commission Company, and in the draft it stated that it was for feed account of plaintiff, and also stated therein the following: "Charge to timber." This draft was used by plaintiff in paying for a car load of feed stuff which he had purchased from said Crescent Commission Company. It is contended by the defendant that this payment by the above draft for $352.80 was made for the defendant, and should be applied upon the account of the plaintiff with the defendant for clearing said right of way and making said ties. It is contended by the plaintiff that this draft was given to him in payment upon the account and contract which he had with the Decatur Egg Case Company for logging. The sole question involved in this case is: to which of these accounts should this payment be applied? For, if it shall be applied to the account between plaintiff and defendant, it will more than pay the balance of $310, which is the largest amount which the plaintiff, under his admission, can in any event claim to be due to him by the defendant. But if this draft for $352.80 shall be applied upon the account of plaintiff with the Decatur Egg Case Company, then, according to the uncontroverted testimony in the case, the defendant is indebted to the plaintiff in the sum of $310 and interest.

The cause was tried by a jury, which returned a verdict in favor of plaintiff for the sum of $310 and interest. The defendant did not in the lower court, and does not here, complain of any instruction given or refused by the circuit court. So that the sole question to be determined upon this appeal is whether or not there is sufficient evidence to sustain the verdict of the jury.

The plaintiff was performing work for these two corporations under separate contracts. For the plaintiff he was clearing its right of way and making ties; and he was logging for the other corporation. While the Decatur Egg Case Company was making payments upon these two accounts, it was making the payments upon one account for the defendant and charged

such payments to the defendant; and on the other account it made the payments for itself. The two accounts were therefore distinct and separate. The manager of the defendant testified that when the draft for $1,400 was given the plaintiff spoke to him relative to the amount due by him to the Crescent Commission Company for the feed, and that he stated to the plaintiff that when draft was given for the amount of that item it would pay off all due by the defendant to plaintiff, and that plaintiff assented thereto.

It is urged by counsel for defendant that, because this testimony was not denied or contradicted by the direct and express words of the plaintiff in his testimony, the uncontroverted evidence shows that this payment was applied upon the account of defendant. The plaintiff testified in the case before the manager of defendant, and he was not questioned relative to these statements afterwards testified to by said manager; and he was not called in rebuttal. But the plaintiff had a right to rely upon all the facts and circumstances adduced in evidence; and if those facts and circumstances and the effect of his own testimony tended to contradict the testimony of said manager of defendant in regard to the matters referred to in these statements, it was not necessary for the plaintiff to specifically deny them. An issue can be established by all the facts and circumstances proved in a cause, and the falsity of testimony may be established by the same character of evidence.

According to the evidence adduced on the part of the plaintiff, the draft for $1,400 was given in payment upon both accounts; $800 of it upon the account of the plaintiff with the defendant, which was specifically named in the draft as the switch account, and $600 of it upon the account of the Decatur Egg Case Company, which was named in the account and known as the timber account. At the time this draft was given the plaintiff had cleared 180 stations of the right of way for defendant; for that amount of work under the contract defendant was due to plaintiff $1,800. Defendant had prior to that time paid to plaintiff two drafts amounting to $1,000; so that at the time of giving this third draft it owed plaintiff $800; and by this draft it paid to plaintiff that sum. At that time plaintiff had not made any ties; so that when this third draft was given and accepted it owed nothing to plaintiff. The plaintiff testified that accord-

ing to their custom of doing the business the defendant never paid him in advance. Three days after the draft for $1,400 was paid to plaintiff, the draft for $352.80 was given. When this last draft was given, the plaintiff had an account with the Decatur Egg Case Company, which was unsettled; and the account between that corporation and plaintiff is still unsettled; and the plaintiff testified that this latter corporation is now indebted to him in a large amount after the account with it is credited with this $352.80. When this draft for $352.80 was given, the manager of the Decatur Egg Case Company, who executed it, wrote in it that it was for feed and "charge to timber." The contract and account which plaintiff had relative to timber, and which was known and called by the parties as the timber account, was solely with the Decatur Egg Case Company; and this draft, the application of which is in dispute, specifically stated that it should be charged to the timber account, which was the account of the Decatur Egg Case Company with plaintiff.

When there are two separate accounts between parties, and a payment is made which could be applied to either, the application of such payment is determined by the intention of the parties. Without going further into the details of the testimony of the case, we think it sufficient to say that we are of the opinion that there was some substantial evidence showing that the Decatur Egg Case Company and plaintiff intended that this draft for $352.80 should be applied upon the timber account of the plaintiff with the Decatur Egg Case Company.

The judgment is affirmed.