**F. H. PEAVEY & CO. v. FIRST NAT. BANK OF DICKINSON.**

**No. 12726.**

Circuit Court of Appeals, Eighth Circuit.

Feb. 24, 1944.

Milton K. Higgins, of Mandan, N. D. (John P. Sullivan, J. P. Fleck and W. J. Sullivan, all of Mandan, N. D., Albert C. Remele, of Minneapolis, Minn., and Sullivans, Fleck & Higgins, of Mandan, N. D., on the brief), for appellant.

P. W. Lanier, of Fargo, N. D., J. K. Murray, of Bismarck, N. D., and J. P. Stevens, of Fargo, N. D., for appellee.

Before STONE, THOMAS, and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

Upon submission of this cause counsel for appellant stated that the only question for determination arises out of the challenged sufficiency of the evidence to support the verdict of the jury; and the record fairly considered presents no other question. The rule is, therefore, applicable that the evidence and all reasonable inferences deducible therefrom must be considered in the light most favorable to the plaintiff. Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720; Lumbra v. United States, 290 U.S. 551, 553, 54 S.Ct. 272, 78 L.Ed. 492; Illinois Terminal R. Co. v. Feltrop, 8 Cir., 130 F.2d 982, 984.

The plaintiff bank alleged in its complaint that the defendant F. H. Peavey & Company was engaged in the business of warehouseman in the village of Beulah, North Dakota, storing grain for grain producers in that vicinity; that one Theodore Hauser, a farmer, deposited wheat for storage with defendant in the years 1938, 1939 and 1940; and that on or about November 30, 1940, the defendant delivered to Hauser a storage ticket in due form for 3960 bushels of wheat through its agent, one Mosbrooker. The complaint further alleges that on December 1, 1940, the plaintiff, for a valuable consideration, in good faith, without notice of defect, purchased the ticket which was assigned and transferred to plaintiff by Hauser. It is further alleged that on or about February 18, 1942, plaintiff demanded possession of the wheat and that defendant refused delivery. The value of the wheat was demanded on the ground of conversion.

The answer was a general denial and, affirmatively, that the storage ticket was issued pursuant to a fraudulent scheme between Hauser and Mosbrooker, defendant's agent; that the ticket did not represent any grain deposited by Hauser and was without consideration; that the ticket, bearing the date November 30, 1930, was issued on an obsolete form of the Monarch Elevator Company not then in use by defendant; and that plaintiff knew these facts or was put upon notice by reason of defects on the face of the ticket.

The instructions of the court, to which neither party objected, informed the jury that the storage ticket is under the law of North Dakota a "negotiable receipt"; and the court submitted to the jury for determination three questions of fact, advising them that in case they should answer all of them in the affirmative their verdict should be for the plaintiff, otherwise for the defendant. The questions submitted were: "First, was the storage receipt, Exhibit No. 1, duly issued and executed and delivered by a duly authorized agent of the defendant Company acting in the defendant's behalf; second, did the plaintiff herein become the owner of said warehouse receipt in due course, in good faith and for value, and without notice of any defects or infirmities therein; third, was there a demand made for delivery of the grain described in said warehouse receipt by the plaintiff?" The jury found for the plaintiff, and the judgment appealed from was entered on the verdict.

There is no contention that the affirmative answer to the third question, that demand for delivery of the grain was made as alleged in the complaint, is not supported by sufficient evidence to support the verdict. The evidence shows that demand was made both orally and in writing.

In reference to the first question submitted to the jury, it is not contended that Mosbrooker was not the agent of the

appellant at Beulah, North Dakota, or that he did not execute and deliver the storage receipt in suit at the time alleged, but it is contended that he did not act in so doing on behalf of the appellant but that he was acting for and on behalf of Monarch Elevator Company, a separate corporation, dissolved in 1937, and that Mosbrooker was not authorized to use that name in appellant's business after July 1, 1938.

The evidence shows that the grain elevator in which Hauser stored his grain in this case at Beulah was for a long time owned and operated by the Monarch Elevator Company, a wholly owned subsidiary of the appellant; that the corporation was dissolved December 1, 1937; but that the name was not removed from the elevator until after this suit was begun and that after its dissolution the appellant's agent continued to use its blank forms of storage receipts in all transactions on behalf of appellant until July 1, 1938, and that, although not authorized to use them thereafter, he did use them in some cases with the knowledge of the appellant. There is no evidence that the plaintiff, or the public, was given any notice, constructive or otherwise, that a change had been made in the way of doing business at the elevator. Further, the Monarch Elevator Company used on the elevator and on its blank forms the insignia of the appellant consisting of the letters "PV" on a diamond-shaped red background. There was evidence, also, from which the inference was warranted that the storage of grain in the elevator after the Monarch Elevator Company ceased to be a corporate entity was all a part of the business carried on by appellant's agent Mosbrooker at that point, and that it was not "on behalf of" any person or corporation other than appellant. The inference drawn by the jury in answering the first question submitted is, we think, supported by substantial evidence.

■ Appellant next contends that the evidence does not support the finding that the plaintiff bank became the owner of the warehouse receipt in due course, in good faith and for value, and without notice of any defects or infirmities therein.

The argument on this point is summarized as follows: (a) That Hauser to whom the receipt was issued did not have any wheat in the elevator at Beulah to serve as consideration therefor; (b) that the plaintiff bank had notice of de-fects in the receipt which deprived it of its standing as a bona fide purchaser, there being (1) lack of address of the payee or depositor, (2) an incorrect date on the receipt, (3) mutilation of Mosbrooker's signature on the receipt, and (4) unfilled blanks on the statutory stub of the receipt, thereby failing to show the scale ticket numbers, the gross bushels, dockage or net bushels.

There is no objection to the complete and accurate instructions given the jury on all these issues. On the question of consideration there is the evidence of Hauser that he had more than 6000 bushels of wheat stored at the elevator when the receipt was issued. Mosbrooker was not present to testify. He had embezzled defendant's funds and was a fugitive at the time of the trial. Defendant's employees who checked his books at the elevator testified that these books showed that Hauser had no grain at the time the receipt was issued which had not been paid for. This record presented a jury question.

■ That the bank accepted the receipt in good faith, for sufficient consideration, and in the regular course of business was testified to by the cashier of the bank, who was not successfully contradicted. There were certain irregularities on the face of the receipt. The incorrect date appears thereon. The printed form contained a blank "—— 193—", in which had been inserted a cipher without changing the figure "3", making the date of issue appear to be 1930 instead of 1940. But the completed receipt was mailed to the bank by Mosbrooker at Hauser's request and received in due course. The error in the receipt was observed by the bank cashier and he wrote over the date with a pencil "1940". In its answer the defendant admitted that the receipt was actually issued on November 30, 1940.

■ The rule in North Dakota is that "nothing but clear evidence of knowledge or the notice of fraud or mala fides can impeach the prima facie title of a holder of a negotiable paper taken before maturity." First Nat. Bank of St. Thomas v. Flath, 10 N.D. 281, 86 N.W. 867, 868. None of the irregularities on the face of the receipt indicate as a matter of law any defect in Hauser's title, any fraud in the inception of the receipt, or that there existed any defense to its enforcement. The issue as to whether the bank became the

owner of the receipt in due course presented a jury question.

Finding, as we do, that the verdict of the jury is supported by substantial evidence, the judgment appealed from is affirmed.