MORRISON–KNUDSEN CO., Inc. v. PHŒ-
NIX INS. CO. OF HARTFORD, CONN.

No. 13766.

United States Court of Appeals
Eighth Circuit.

Jan. 3, 1949.

Rehearing Denied Jan. 25, 1949.
As Corrected Feb. 14, 1949.

See also 162 F.2d 673.

Robert L. Rogers, II, of Talley & Owen, all of Little Rock, Ark., for appellant.

Walter D. Hanson and F. A. Rittenhouse, both of Oklahoma City, Okl., and McMillen & Teague, of Little Rock, Ark., for appellee.

Before GARDNER, Chief Judge, and THOMAS and COLLET, Circuit Judges.

GARDNER, Chief Judge.

This was an action brought by appellant against appellee seeking to reform an insurance policy and to recover on the policy as reformed. We shall refer to the parties as they were designated in the trial court.

It is alleged in plaintiff's complaint that prior to March 10, 1945, it contracted with the United States Department of Interior, Bureau of Reclamation, to build and construct a siphon culvert under a river near Altus, Oklahoma. The siphon culvert involved the inbuilding of a large concrete pipe onto the rock and other hard formation across and under the bed of the river so that waters flowing into the siphon from the source on one side of the river could be directed across and under the river; that the pipe forming the siphon was set in forms and after removal of the forms became an integral connected part of the rock and other formations below the river bed, and the primary danger to the project during construction was that which might be caused by flood, including the filling and stopping of the siphon with mud, silt and other debris; that the amount of damages and expenses which could be caused by this type of catastrophe was estimated by plaintiff's engineer at approximately $25,000; that plaintiff consulted one D. T. Hargraves, Jr., the authorized agent for defendant with authority to issue policies for the defendant company, and that said agent agreed with plaintiff that for and in consideration of the payment of $1,000, it would, for a period of three months from December 21, 1944, insure plaintiff against all loss and damage caused by flood, rising water and certain other perils to said siphon during the course of its construction up to $25,000; that it was agreed between the parties that the policy of insurance to be issued by defendant should be the only insurance obtained by plaintiff on this particular property; that when the policy was prepared by defendant, through mistake there was attached to said policy a co-insurance clause in the form of a rider, providing prorating of the amount of insurance contracted for with the total value of the contract price, although the main policy itself set out that the $25,000 of insurance was to be 100 per cent coverage of the risk insured; that plaintiff paid the $1,000 premium and that while the siphon culvert was in process of construction there occurred on the night of March 10, 1945, a flash flood followed by rising waters; that the flood waters filled the siphon culvert and both openings thereof with mud, dirt and other debris so that it was completely blocked for a large portion of its passageway; that to clean out and restore the siphon culvert plaintiff necessarily expended the sum of $9,865.34. Plaintiff then asked that the policy be reformed by removing the co-insurance clause; that it recover $9,865.34 as damages, together with interest, 12 per cent penalty, and reasonable attorney fees, besides its costs.

By its answer defendant admitted that plaintiff had a contract with the government for the construction of a project near Altus, Oklahoma, denied that D. T. Hargraves, Jr., was ever an authorized agent of the defendant to issue and countersign policies of insurance upon risks in Oklahoma. It admitted the corporate existence of the plaintiff and itself and in effect denied generally or specifically all other allegations of the complaint. It specifically denied that the policy covered the entire project but that it covered only physical damage to the siphon culvert; alleged that plaintiff's completed contract price for the siphon culvert was $25,000; that plaintiff's completed contract price for the entire contract was approximately $270,000; that the policy was written and the co-insurance clause placed thereon "covered only the physical damage to the siphon culvert and as to the coverage of the policy as written the $25,000.00 was 100% coverage on the physical damage to

said siphon culvert; that if said policy can be construed to cover the entire project, or on any coverage other than as expressed in said policy, then the policy would have to be construed as job insurance and the court would then apply the co-insurance clause and defendant's liability if any, would be 25,000/270,000 of the loss and damage claimed herein to have been sustained by the plaintiff."

The court found that D. T. Hargraves, Jr., was a general agent for the defendant but that his agency did not authorize him to bind his principal upon inland marine policies but that application for such policies had to be referred to his principal and that plaintiff's agent was so advised; that plaintiff's agent talked with Mr. Hargraves, told him the type of policy plaintiff wanted—a Builder's Risk policy upon the concrete siphon culvert—and Hargraves understood fully what the plaintiff wanted; that Hargraves communicated with defendant's superintendent of the Inland Marine Department, who had authority to bind the company on such policies as the one in suit; that Mr. Hargraves advised defendant's superintendent, who was authorized to issue such a policy, of the type of policy wanted by plaintiff, but defendant's superintendent did not accept the application but took it under consideration and later called Mr. Hargraves, advising him that he would write a policy; that the record fails to show definitely that he accepted the terms of the offer, or if he made a counter-offer. Mr. Hargraves took time to consider Mr. Callahan's answer and the next day, which was December 21, 1944, wired Mr. Callahan (defendant's superintendent) to issue the policy. The policy was thereupon issued according to Mr. Hargraves, who signed it without reading it and delivered it to the plaintiff; that plaintiff's agent did not read the policy until after the loss occurred; that the policy as written and delivered did not cover the loss claimed by plaintiff; that the loss occurred March 10, 1945, when a flash flood filled the unfinished concrete siphon culvert with sand and debris but did not damage the culvert itself; that the evidence relied on by plaintiff to establish its right to a reformation of the policy was not clear, unequivocal, satisfactory and decisive.

The court then found that the evidence did not disclose a meeting of the minds on the part of plaintiff and defendant. As a matter of law the court concluded that plaintiff was not entitled to a reformation of the contract; that the payment of the premium was without consideration; that there was no contract of insurance but that plaintiff was entitled to judgment for the amount of premium paid with interest. Judgment in conformity with the findings and conclusions was thereupon entered.

In seeking reversal plaintiff urges the following points: (1) The lower court should have granted reformation of the policy by removing the co-insurance clause; (2) plaintiff is entitled to have the policy reformed to specifically cover "cleaning out and debris removal" and the lower court erred in not so holding; (3) plaintiff is entitled to recover on the policy as written and the lower court erred in not so holding.

The ground alleged as the basis for reforming the insurance contract was mutual mistake. There was no claim of fraud, duress or misrepresentation. To justify a reformation of the contract on the ground of mutual mistake, the Supreme Court of Arkansas has held that the evidence must be clear, unequivocal, satisfactory and decisive. York v. McKamey, 175 Ark. 1170, 300 S.W. 371. We have examined the testimony and we can not say that it was such as to require the court to grant reformation, the court having found that it was not of such a definite and satisfactory character as to warrant such action. In our view of the contract, however, we do not think, even if erroneous, this finding and conclusion of the court was prejudicial. The insurance clause provides that,

" * * * The Phoenix Insurance Company, hereinafter called the Company, does insure Morrison-Knudsen Company, Inc., hereinafter called the Assured, whose address is Altus, Oklahoma, for the term of three months from the 21st day of December, 1944, at noon, Standard time, at the location of property described herein to an amount not exceeding $25,000.00, being part of total insurance in amount of $25,000.00, being 100% interest, to be referred to hereafter as this Company's percentage on prop-

erty situated at: Near Altus, Oklahoma, described as follows: Siphon culvert including foundations, additions, attachments and permanent fixtures belonging to and constituting a part of said property. * * *

"2. This policy insures only against loss or damage caused by fire, lightning, flood, rising waters, ice, etc."

The so-called co-insurance clause is on a printed form attached to the policy and provides that,

"This Company shall be liable for no greater proportion of any loss than the total amount of insurance stated herein bears to 100% of the Assured's completed contract price for the property described herein, nor for more than the proportion which this policy bears to the total insurance thereon, whether valid or not and whether collectible or not."

There was no other insurance, as both parties knew. The policy did not cover the entire project and did not purport to do so, but covered only the siphon culvert. There was no contract price for the siphon culvert and there was nothing upon which this clause could operate or to which it was applicable. The transcript of the pretrial hearing indicates that this was the view of counsel for the defendant. At that conference counsel for defendant, referring to this clause, said:

"But if that part of the policy is correctly written, the co-insurance clause does not affect him. We are willing to pay the part to the siphon that they can prove * * *."

And in their brief counsel for defendant say:

"Here, the property covered or subject of insurance is the siphon culvert. The contract of the plaintiff was to construct an irrigation canal and the siphon culvert was only a portion of that contract. * * *

"The amount of $25,000.00 was fixed as the cost of the siphon culvert and, if the policy is construed as covering the siphon culvert and such was in fact the cost to the appellant, then the co-insurance clause is inoperative and the plaintiff may recover any loss or damage which is shown to have occurred to the siphon culvert or materials on hand for use in it."

We think counsel for defendant are correct in their view that the policy properly construed covers damage to the siphon culvert and that as so construed the co-insurance clause is inoperative. It is, however, the contention of defendant that the damages here were not of such a character as to be recoverable because the physical structure of the siphon was not damaged. It is argued that this was a builder's risk and that the siphon was still intact after the flood waters had filled it with debris. We think this is too technical and narrow a view.

This policy was on a form prepared by the defendant and in case of any doubt or uncertainty as to its meaning, it must be interpreted against the party who has drawn it. Pfeiffer v. Missouri State Life Ins. Co., 174 Ark. 783, 297 S.W. 847, 54 A. L.R. 600; Hope Spoke Co. v. Maryland Casualty Co., 102 Ark. 1, 143 S.W. 85, 38 L.R.A.,N.S., 62, Ann.Cas.1914A, 268.

This property, as urged by counsel for defendant, was only a part of the entire project under construction. It was in form an inverted siphon. Its purpose was to conduct water under the river so as to make it available for irrigation purposes on the other side of the river from the source of the water. It had not been completed when the flood occurred. When the flood waters filled this siphon with mud, stone and debris, it was rendered useless and entirely ineffective as a siphon and that was the only purpose for which it was being built. It could certainly not have been turned over by the plaintiff to the United States Department of Interior, Bureau of Reclamation, as a finished product. Manifestly, before it could be accepted as such it was necessary that this debris be removed therefrom. The filling of the siphon was therefore damage to the siphon. True, the material in the siphon may still have been intact, but it was no longer a conduit of water and could not be made such without removing the materials which had been forced into it by the flood waters. It appears from the undisputed evidence that the very purpose of taking out the insurance was to guard against damage by the flood waters, and this purpose was known to defendant's agent, Har-

graves. He was found to be the General Agent for the defendant even though he did not have authority to write this kind of policy. However, his signature appears in three different places on this policy as the representative of the Insurance Company. Notice to him was, we think, notice to the company. He testified that Mr. Williams, plaintiff's construction engineer, requested the Builder's Risk policy covering the construction of a siphon culvert; that he offered to pay $1,000 for a $25,000 policy for the term of three months; that Williams explained that they were building a concrete siphon under a river near Altus, Oklahoma. He testified:

"Well, we had discussed it previously, about writing the insurance. I believe at the time he bid on the job. Of course the main hazard he had there would be flood, which had also occurred at another job. He stated that $25,000 would cover all the loss that he thought he could sustain."

He testified that it was his understanding that this policy was to be the only coverage. He also testified:

"Mr. Williams asked me to get a policy like he had on the Norfolk Dam—the Builder's Risk. I did not write a Builder's Risk on the Norfolk Dam but I had seen the policy. As I recall it it did not have a contribution clause in it. Nothing was said about a contribution clause when this particular policy was written."

He testified that he repeated to Mr. Callahan the conversation he had had with Mr. Williams regarding the project and told him that a policy to cover the builder's risk for the construction of a siphon culvert was wanted.

This siphon culvert was constructed in a tunnel excavated under the river, the top of which tunnel was 16 feet below the bed of the river. It was imbedded into shale which approached rock. Above the foundation it was barrel-shaped, 9½ feet inside diameter. The sides were 11½ feet high, and the bottom 16 feet, 4 inchs wide. There was undisputed testimony to the effect that as a physical fact the structure could not possibly have been damaged by flood waters, except by being filled with mud and debris. Damages generally are compensatory in nature. This structure, for the purposes intended, was worth $9,865.34 less after the flood than it was before the flood because it could only be used as a siphon by removing this mud and debris which practically filled the portion built under the river bed. Plaintiff actually suffered this damage by reason of the flood. True, the material which went into the structure was not damaged, but this was not a block of cement; it was an unfinished structure being modeled into a siphon, and in the policy it was described as a siphon. The damage which was caused by this flood was that which was in contemplation at least by the plaintiff, and this fact was known by the defendant because it was communicated to its General Agent.

The court found that the contract was without consideration and that the minds of the parties had not met, but that, we think, was based upon a misconception of the import of the contract. The contract was in writing, a writing which had been prepared by the defendant. The defendant was paid $1,000 as a consideration and the contract was delivered to and retained by the plaintiff, and under these circumstances the parties were bound by its terms as properly interpreted, and where there is no right to a reformation of the written contract, the rights of the parties must be determined according to the writing. The plaintiff had not only paid a consideration but relied upon the contract as insuring against the hazard which in fact happened, and the mere fact that the parties may disagree as to how the contract should be interpreted does not warrant a rescission of the contract. Lamson v. Horton-Holden Hotel Co., 193 Iowa 355, 185 N.W. 472, 26 A.L.R. 465; Bancroft v. Union Embossing Co., 72 N.H. 402, 57 A. 97, 64 L.R.A. 298.

It is to be noted in passing that neither of the parties, by pleading or otherwise, contended in the lower court or in this court that there was no contract or that it was without consideration.

We conclude that under the undisputed evidence plaintiff was entitled to recover $9,865.34 and interest, and in addition to the amount of such loss 12 per cent damages upon the amount of said loss; that

he is also entitled to recover reasonable attorney fees for the prosecution and collection of said loss as provided by Act 71 of the 1939 Laws of the State of Arkansas.

The judgment appealed from is therefore reversed and the cause remanded with directions to enter judgment in favor of the plaintiff for the sum of $9,865.34, and interest, plus 12 per cent damages upon the amount of such loss, and the trial court is authorized to fix and determine reasonable attorney fees for the prosecution of said action in said trial court, to be recovered as part of the costs in said action.

Attorney fees on this appeal are hereby fixed and awarded to plaintiff in the sum of $300.