**TRADERS & GENERAL INS. CO. v. POWELL.**

No. 13908.

United States Court of Appeals
Eighth Circuit.

Oct. 18, 1949.

Rehearing Denied Dec. 5, 1949.

Fred A. Isgrig, Little Rock, Ark. (Jno. S. Gatewood, Little Rock, Ark., on the brief), for appellant.

Wayne W. Owen, Little Rock, Ark., (Paul E. Talley and Robert L. Rogers, II, Little Rock, Ark., on the brief), for appellee.

Before GARDNER, Chief Judge, and THOMAS and RIDDICK, Circuit Judges.

THOMAS, Circuit Judge.

In this case Mrs. Eula V. Powell, the appellee, suffered bodily injuries July 28, 1945, in a collision between an automobile in which she was riding and a truck driven by one Henry Hardy and owned by Floyd Sturgis, doing business as Sturgis Lumber Company. Mrs. Powell brought suit against Hardy in the United States District Court of Arkansas for damages, alleging that her injuries were the result of his negligent operation of the truck. In that action she recovered a judgment against Hardy for $15,000. On the judgment so obtained Mrs. Powell sued out an execution which was by the United States Marshal returned nulla bona. The parties to this suit stipulated that Hardy was insolvent.

At the time of the collision the Sturgis Lumber Company carried a policy of public liability insurance issued by appellant, The Traders & General Insurance Company, a Texas corporation doing business in Arkansas. The policy gave the Sturgis Lumber Company protection to the extent of $10,000 under "Coverage A" for liability for bodily injury suffered by any one as a result of collision with the truck involved in the accident in which appellee was injured. Under the heading, "Definition of Insured", the policy provided that "The unqualified word 'insured' wherever used in coverage A * * *, when applicable to such coverage, includes the named insured and * * * also includes any person while using the automobile * * * provided the actual use of the automobile is with the permission of the named insured."

In her complaint in this case Mrs. Powell alleged that Hardy was operating the truck at the time of the accident with permission

of the Sturgis Lumber Company. She brought this suit against appellant Insurance Company under § 7775 of Pope's Digest of the Statutes of Arkansas which provides that in the situation here presented the injured person "may maintain a direct cause of action against the insurance company issuing such policy for the amount of the judgment rendered against such assured, not exceeding the amount of the policy."

Under the foregoing statute Mrs. Powell's recovery was limited to $10,000, the amount of the policy. She also demanded judgment for 12 per cent damages and a reasonable attorneys' fee and costs under § 7670 of Pope's Digest of the Statutes of Arkansas, as amended by Act No. 71 of the Acts of 1939, which provides that "In all cases where loss occurs and the * * * insurance company liable therefor shall fail to pay the same within the time specified in the policy, after demand made therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of such loss, twelve per cent damages upon the amount of such loss together with all reasonable attorney's fees for the prosecution and collection of said loss; said attorney's fee * * * to be taxed up as a part of the costs therein and collected as other costs are, or may be by law collected * * *."

The appellant admitted that it issued the policy of insurance involved to the Sturgis Lumber Company and alleged that Henry Hardy was an employee of the Company, but that at the time of the collision in which Mrs. Powell was injured Hardy was not using the truck in any business of his master but that he was using the truck without permission of the Sturgis Lumber Company; that the policy, therefore, did not cover Hardy, and appellant is not liable for the judgment obtained against him. Appellant also denied liability for a 12 per cent penalty and attorneys' fees.

The case was tried to a jury, and the issue submitted for determination was whether the actual use of the truck by Hardy at the time of the accident was with the implied permission of the Sturgis Lumber Company.

At the close of the testimony appellant moved for a peremptory instruction in its favor, which motion the court overruled. The jury found the issues for Mrs. Powell and assessed her recovery at $10,000, for which amount judgment was entered against appellant together with a penalty of 12 per cent of the amount of recovery plus an attorneys' fee of $1,500, from which judgment this appeal was taken.

Appellant contends here that the court erred: 1. In refusing to direct a verdict for the defendant-appellant (a) because the proof was not sufficient to show that Hardy at the time of the accident was driving the truck with the consent, expressed or implied, of the Sturgis Lumber Company, and (b) that Hardy was not the "insured" in the contemplation of the policy or of the Arkansas statute; 2. In refusing to give appellant's requested instructions 2 and 3; and 3. In assessing a 12 per cent penalty and attorneys' fee against appellant.

In 1945 and prior thereto Floyd Sturgis, doing business as Sturgis Lumber Company, was operating a saw mill and logging business about two miles east of Fordyce, Arkansas. In his business he had in use from 12 to 14 trucks, all covered by the public liability insurance policy issued by appellant and referred to above. The drivers of the trucks were permitted to take the trucks which they drove during working hours home with them for the night and over weekends, returning with the trucks to the woods the following morning. It was the custom for the mill to close and logging operations to stop at noon on Saturdays. On Saturday afternoon, July 28, 1945, Hardy took the truck driven by him and went to his home in Fordyce. Later in the afternoon Hardy disconnected the trailer and with some friends took the truck and started to Beech Grove after some beer. When about two miles west of Fordyce the truck he was driving collided with the automobile in which appellee was riding causing the bodily injuries complained of in her suit against Hardy.

It will be observed that the word "insured" under the definition in the policy, quoted supra, " * * * includes the named insured and * * * also * * *

*any* person while using the automobile * * *, provided the actual use of the automobile is with the permission of the named insured." (Emphasis supplied.) There are no limitations. It applies to "any person" whether he be an employee of the insured or not, and whether, if an employee, he be acting at the time within the scope of his employment or not. The only proviso is that the "actual use" at the time of the bodily injury "is with the permission of the named insured." The parties agree that "permission" means "with the consent, expressed or implied, of the insured owner."

The first contention of the appellant is that there was not sufficient evidence on the question of consent to take the case to the jury and that a verdict for appellant should have been directed. The court without objection of either party instructed the jury that " * * * there is no evidence in this case that Hardy had the express permission of the Sturgis Lumber Company to use the truck at the time of plaintiff's injury; and the question for you to determine is whether or not the driver had the implied permission of the Sturgis Lumber Company to the actual use of the truck at the time.

* * * * * *

" * * * such permission can be inferred, if you find from a preponderance of the evidence that Hardy had been using the truck for sometime on similar trips with the knowledge of the Sturgis Lumber Company and that the company acquiesced therein. And you are further told that the mere fact, if it is a fact, that the Sturgis Lumber Company had previously prohibited Hardy from using the truck for his personal ends, would not be conclusive, if you find from a preponderance of the evidence that thereafter Sturgis Lumber Company, over a reasonable period of time, knew that the driver was using the truck for his own personal use and on trips similar to the one involved here, and acquiesced therein to such an extent as would indicate to reasonable minds that the driver had the right to assume permission under the particular circumstances."

The witnesses for the appellant, including Mr. Sturgis, denied that permission had ever in any way been given Hardy to use the truck in question except in going from his work to his home and returning to his work and that he, Sturgis, had explicitly instructed Hardy that he should in no way use the truck for any other purpose and that Hardy should permit no one to ride in the truck other than employees of the company when going home or returning to work. Sturgis testified that Hardy had worked for him in 1942 or 1943 and once or twice before that, and that he had been working for him for three or four months steadily before the accident. He testified further: "I tried to keep check or watch with reference to use of my trucks at night. I knew where all the boys lived and I would go by at night and see if the trucks were there. I knew my own trucks. * * * I have checked on the place where Henry lived. * * * Nobody ever told me Hardy was using my truck to go around to honky tonks or for his own business or for his own pleasure or profit. * * * I knew where Henry Hardy lived in 1945."

The sole question for our determination on this issue is, therefore, whether there is any substantial evidence to support the verdict of the jury for the appellee. In considering this question we assume as established all the facts that appellee's evidence reasonably tends to prove, and there must be drawn in her favor all the inferences fairly deducible from such facts. Lumbra v. United States, 290 U.S. 551, 552, 54 S.Ct. 272, 78 L.Ed. 492; Sears, Roebuck & Co. v. Scroggins, 8 Cir., 140 F.2d 718, 723; F. H. Peavey & Co. v. First National Bank of Dickinson, 8 Cir., 140 F.2d 815. Problems presented by conflicting evidence or depending upon credibility of witnesses and weight of the evidence are to be decided by the jury and not by this or the trial court. Walkup v. Bardsley, 8 Cir., 111 F.2d 789; Lynch v. United States, 2 Cir., 162 F.2d 987.

The town of Fordyce, Arkansas, was the home both of Mr. Floyd Sturgis and of Henry Hardy driver of the truck involved in the accident. The business district of

Fordyce is two blocks wide and four blocks long. Sturgis lived at the Kilgore Hotel there for some time in 1945; but he was at the saw mill part of the time and in the woods supervising the logging part of the time. Hardy, an unmarried colored man, lived about a half mile from Main Street in the Negro quarters and boarded about two blocks from Main Street.

Charles L. Parker, Night Marshal of Fordyce, Clary Atkinson, City Marshal, Otis Butler, Assistant Night Marshal, Charlie Barnett and Eva, his wife, with whom Hardy boarded, and John Banks, operator of a cafe in Fordyce, all testified that they knew both Sturgis and Hardy; that Hardy used the truck as his own at all times; that he was out with it at nights until late into the night; and that he parked it on the streets at times.

A. D. Monk lived in Fordyce in 1945 and had known Hardy since 1939. He testified that he and his wife were with Hardy at the time of the accident. They were on their way to Beech Grove. Hardy picked them up that day in Fordyce at a house near the colored Sanctified Church. He and his wife had been out with Hardy at other times. He had seen Hardy driving the truck up the streets at times when he was not on duty. Sometimes he would go with Hardy whenever he was not on duty, and they would drive up and down Main Street in Fordyce. He knew Sturgis and saw him around the mill when he was riding out to the woods with Hardy. He saw Sturgis down town, also, when he was out with Hardy and they passed him on the street. They passed Sturgis in the truck. Hardy bought gasoline at practically every station there. On the afternoon of the accident Hardy picked him and his wife up about two-thirty. The collision was in the evening, but the truck lights were not turned on at the time. He saw Sturgis on three different occasions when he was riding around with Hardy. He saw him at the mill and they passed him on the highway. They passed him one time between the mill and town. He was going in the opposite direction. Hardy was driving the log truck with the trailer detached.

Shep Amos testified that he knew Hardy and Sturgis both in 1945 and that he often rode in the truck with Hardy on the streets of Fordyce and in the country when Hardy was not on duty. Hardy kept the truck all the time. He saw Sturgis in town lots of times. He saw Sturgis by the Kilgore block when he was in the truck with Hardy and when Hardy was off duty. He saw Hardy buy gas sometimes and pay for it himself.

The evidence shows, also, that when Hardy was on duty there was always attached to the truck a trailer on which logs were carried, but when off duty driving the truck about town and in the country with his friends the trailer was usually detached. Hardy kept the keys to the truck at all times; and he was seen three or four times a week, on Saturday afternoons and at night, with different colored people riding with him on the streets of Fordyce and visiting honky tonks or beer joints in the town and in the country.

Henry Hardy testified for the appellant. He corroborated the testimony of Sturgis that he was specifically instructed by Sturgis not to drive the truck for himself. He testified that at the time of the collision with the automobile in which appellee was riding he was going to Beech Grove, a kind of night club, about two and a half or three miles west of Fordyce to get a bottle of beer; and that Monk and his wife were with him. The collision occurred about sundown. He testified further, "I kept the truck seven days a week, twenty-four hours a day and drove it in a way like it was my own. I drove it whenever I chose."

In support of its point that the evidence was not sufficient to take the issue of permission to the jury appellant first argues that appellee relies on a presumption that Hardy was driving the truck at the time of the accident with the consent of Sturgis and that the presumption was overcome by the testimony of Sturgis. This we do not think is a correct view of the record. The case was tried on the theory that the evidence warranted a finding of implied consent or permission. The theory that appellee's case rests upon a presumption first

appears in the record by way of objections to the instructions when counsel for appellant insisted that the court should direct a verdict for appellant. The difference between the two theories is made clear by the authorities relied upon by appellant. The first and most apposite case cited is that of Standard Acc. Ins. Co. v. Rivet, 5 Cir., 89 F.2d 74. The suit was for damages for the death of plaintiff's son in a collision between an automobile in which he was riding as a guest and a truck owned by one Frank de Latour, appellant's named insured. The action under the law of Louisiana was brought directly against the insurance carrier. So far as material here the plaintiff sought recovery on the ground that at the time of the collision the truck was being operated by a servant of the owner, in the business of the owner, and within the scope of the servant's employment.

It was claimed that under these circumstances there was a presumption that the servant had the insured's permission to drive the truck at the time. However, the undisputed evidence showed that the servant at the time of the accident was not on the owner's business but was joy riding with a truck load of women and children; that he had no authority to drive the truck at that time and place, and that it was the first time he had ever used the truck for his own pleasure and outside of his master's business.

■ Had the evidence in the present case been analogous to that in the cited case no doubt the trial court would have sustained appellant's motion for a directed verdict, for it is generally the rule that a presumption vanishes when evidence of the fact in issue appears. A presumption is rebutted when a contrary fact appears. 20 Am.Jur., Evidence, § 160.

■ Presumptions of fact, however, affect only the burden of proof. They do not estop a party from proving his case by competent evidence. 20 Am.Jur., Evidence, § 157. In the instant case appellee did not rely upon presumptions. She did not claim that Hardy was on his master's business or acting within the scope of his employment at the time of the collision in question. She

relied upon reasonable inferences to be drawn from a course of conduct and pertinent and relevant circumstances. Such inferences and circumstances constitute evidence, not presumptions. 31 C.J.S., Evidence, § 116. And if such circumstances and such inferences justify the inference of consent, positive evidence in rebuttal cannot destroy the probative force of such circumstances. In such a situation it is for the jury to weigh the evidence and pass upon the credibility of the witnesses. Christiansen v. Schenkenberg, 204 Wis. 323, 236 N.W. 109, 110; Shaul v. Katzenstein, 172 Ark. 932, 290 S.W. 966; St. Louis, I. M. & S. R. Co. v. Owens, 103 Ark. 61, 145 S.W. 879. "An issue can be established by all the facts and circumstances proved in a cause, and the falsity of testimony may be established by the same character of evidence." Paragould & M. R. Co. v. Smith, 93 Ark. 224, 124 S.W. 776, 777.

■ Although the evidence in this case is such that reasonable men might not agree, we think that considering the length of time Hardy had worked for the Sturgis Lumber Company and the testimony of the witnesses the trial court was warranted in refusing to direct a verdict for appellant. The evidence warrants the inference that Sturgis knew that Hardy was using the truck as his own; that he was disobeying the instruction not so to use it; and that Sturgis acquiesced in such use. That Sturgis impliedly consented to the use of the truck on the occasion in question is, therefore, a reasonable inference. This conclusion is strengthened by the fact that Sturgis permitted Hardy to keep the keys to the truck at all times. Stovall v. New York Indemnity Co., 157 Tenn. 301, 8 S.W.2d 473, 72 A.L.R. 1368; 6 Blashfield, Cyclopedia of Automobile Law and Practice, Perm.Ed., § 3943, page 613. "* * * permission connotes some opportunity for knowledge." Cardozo, J., in People ex rel. Price v. Sheffield Farms-Slawson-Decker Co., 225 N.Y. 25, 121 N.E. 474, 476. Certainly Sturgis had ample opportunity to know that Hardy was driving the truck. His testimony that he checked on Hardy's use of the truck at night and at all times and never saw him use the truck for his

own purposes and that he always found the truck at Hardy's place at night is in direct conflict with the testimony of Hardy himself and with that of the city marshals and others whose testimony is reviewed supra. And see Card v. Commercial Casualty Ins. Co., 20 Tenn.App. 132, 95 S.W.2d 1281; Winnowski v. Polito, 294 N.Y. 159, 61 N.E.2d 425. As to permission to use an automobile under similar omnibus coverage clauses, see Stovall v. New York Indemnity Co., supra, 157 Tenn. 301, 8 S.W.2d 473, as reported in 72 A.L.R. 1375; American Casualty Co. of Reading Pa. v. Windham, 5 Cir., 107 F.2d 88, 90, and cases cited, certiorari denied, 309 U.S. 674, 60 S.Ct. 714, 84 L.Ed. 1019.

■ Appellant calls attention to the fact that to qualify another than the owner to be included as an "insured" the policy employs the language: "provided the *actual use* of the automobile is with the permission of the named insured"; and appellant contends: "The 'actual use' unquestionably refers and was intended to have its application to the *time of the accident* which caused or resulted in the injury complained of." From this premise it is argued that there is no evidence that Hardy was driving the truck at the time of the accident with the permission of Sturgis, either expressed or implied. This is an erroneous assumption. It assumes that all the evidence introduced to establish implied permission related to other times and places than the time and place of the collision. The whole purpose of the evidence was to prove that Hardy had the implied permission of Sturgis to drive the truck on the trip on the way to the beer joint at the very time and place of the collision. It is true that the evidence covered a course of conduct over a rather long period of time and involved a succession of circumstances, but all pointing to a single conclusion, namely, that the "actual use" of the truck by Hardy at the time and place of the collision was with the implied permission of Sturgis. The use of

an automobile at any time by one other than its owner is its "acutal use." Vezolles v. Home Indemnity Co., New York, D.C.Ky., 38 F.Supp. 455, affirmed sub. nomine Home Indemnity Co., N. Y. v. Vezolles, 6 Cir., 128 F.2d 257.

■ The difference between express permission and implied permission is simply in the mode of proof. In the first the proof must show the express language used in the grant, while in the other case the scope of the grant is inferred as a matter of fact from circumstantial evidence. Acquiescence in a course of conduct with knowledge is sufficient to support a finding of consent. This fact inheres in appellant's requested instruction No. 2 discussed below and is covered by the instruction given by the court.[1]

■ If, as the jury found, Hardy was driving the truck at the time of the accident with the permission of the Sturgis Lumber Company he was the "insured" at that time within the meaning of the policy as the word "insured" is defined therein. Maryland Casualty Co. v. Lopopolo, 9 Cir., 97 F.2d 554.

Appellant next contends that the court erred in refusing to give its requested instructions Nos. 2 and 3, which read:

2. "You are instructed that the burden is upon the plaintiff to prove by preponderance of the evidence that the actual use of the truck in question at the time of the alleged injury was with the owner's consent or permission. Permission means consent express or implied to use the automobile at the time or place, for the purpose authorized by the insured as distinguished from permission in the first instance.

3. "You are instructed that permission to use the car to and from the home of the driver to the place of business of the Sturgis Lumber Company did not give permission to use the car or truck in question for the personal uses or pleasure of the driver, Hardy, and if you find in this case that the

---

1. The court having instructed the jury without objection that "permission" means "consent, express or implied", such instruction is "the law of the case" on appeal. Rule 51, Federal Rules of Civil Procedure, 28 U.S.C.A.; F. W. Woolworth & Co. v. Carriker, 8 Cir., 107 F.2d 689; Ætna Life Ins. Co. v. McAdoo, 8 Cir., 115 F.2d 369.

driver Hardy after taking the car to his home, then left his home and started upon a visit of his own and the Sturgis Lumber Company had not given its permission for him to do so, then the driver was using the car without permission of the owner and your verdict will be for the defendant."

The court, counsel for the parties and the reporter met in chambers and discussed the instructions before the jury was charged. The record shows that at that time the court indicated what instructions he proposed to give, heard the requests, and amended his instructions to include, as he thought, proper instructions suggested by counsel for appellant in his previously prepared instructions. Comparing the requests with the instructions given, it appears that the substance of requested instruction No. 2 is expressed in the following excerpts from the instructions given:

" * * * You are instructed that the burden of proof is upon the plaintiff, Mrs. Powell, to establish by a preponderance of the evidence that the driver, Hardy, had the express or implied consent of the Sturgis Lumber Company to the actual use of the truck at the time of the collision with the car in which Mrs. Powell was riding when injured * * *

"You are instructed that permission to use a vehicle covered by the policy can be either express or implied. Express permission is that permission which is expressly given and which provides for the actual use of the truck at the time of the accident. Implied permission is permission which may be implied from the conduct of the parties, and which may arise and be implied from the circumstances. That is to say, permission that might be implied by reason of the conduct of the driver of the truck in using it outside the scope of his employment and for his own personal use, and the conduct of the insured, the Sturgis Lumber Company, in acquiescing in such use for a reasonable length of time with full knowledge on its part that the truck was being used by the employee outside the scope of his employment and for his own personal use * * * you could not imply permission unless you

found from a preponderance of the evidence that the employee did use the truck for his own personal use for a reasonable length of time and that such was done with the full knowledge thereof on the part of * * * his employer, and that his employer acquiesced therein."

It will be observed that requested instruction No. 3 is not a clear statement of the law unless there be inserted after the word "permission" in the line next to the last line thereof the words "express or implied." As so amended, request No. 3 was fully covered by the following instruction given by the court:

"Permission given the driver of the truck to use the same in merely going from his work to his home and returning from his home to his work, would not, in itself, constitute permission to use the truck in question for the driver's personal usage or pleasure.

"If Hardy had deviated from the purpose for which consent to the use of the truck was given, that is, consent to use it in going from his work to his home and from his home to his work, and was using the truck about his own business, without the express or implied consent of the Lumber Company, then the defendant in this action would not be liable."

The court fully and correctly instructed the jury on the law applicable to the case, including all that was sound law in the appellant's requested instructions.

Finally the appellant contends that the court erred in assessing a 12 per cent penalty together with an attorneys' fee against appellant under § 7670 of Pope's Digest as amended by Act 71 of the Arkansas Legislature, supra, in that the judgment should have been limited to the face of the policy of insurance as provided in § 7775 of Pope's Digest, supra. When this argument was urged in the trial court the court observed that a proper determination of the question depended upon the language of the policy more than upon the construction of the statute. The policy provides that "Any person * * * who has secured such judgment (as Mrs. Powell ob-

tained against Hardy) * * * shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy." Since, therefore, the jury found that Hardy was driving the truck with the consent of Sturgis at the time of the accident and injury he, Hardy, was the "insured" under the definition of that term in the policy, supra. The court then concluded that "When the insurance company contracted that the plaintiff under these conditions would be entitled to recover under the policy to the extent of the insurance afforded thereby, it brought the plaintiff squarely within the provisions of Section 7670 of Pope's Digest, as amended, which provides that the 'holder' of the policy shall be entitled to recover 12% penalty and reasonable attorneys' fees." Citing Huddleston v. Home Life Ins. Co. of New York, 182 Ark. 1036, 34 S.W.2d 221, 222, wherein the Supreme Court of Arkansas held that the "holder" of an insurance policy "as employed in the statute * * * is the person, or persons, who, having the right to sue, have exercised that right successfully."

The trial court held further that in using the expression "not exceeding the amount of the policy" in § 7775 of Pope's Digest "the Legislature had in mind the basic amount of the recovery * * * and * * * that the provision of the policy, to the effect that the judgment creditor shall 'be entitled to recover under this policy to the extent of the insurance afforded by this policy' likewise refers to the basic amount of the recovery, and does not constitute a limitation with respect to penalty and attorneys' fees, if such a limitation could legally be created by contract." In this connection it will be noted that § 7670 of Pope's Digest, as amended, provides that the 12 per cent penalty and attorneys' fees are "to be taxed up as a part of the costs therein and collected as other costs are * * *"; and § 27-2308 of Bobbs-Merrill Arkansas Digest provides that "if any person shall sue in any action, and shall recover judgment, the plaintiff shall have judgment for costs against the defendant." This implies, at least, that the judgment for costs is in addition to and distinct from the judgment on the policy referred to in § 7775 of Pope's Digest which provides that the judgment rendered shall not exceed "the amount of the policy."

We think the interpretation of these Arkansas statutes by the district court is reasonable; and in the absence of a relevant decision of the state court this court ordinarily accepts the views of a trial court upon all doubtful questions of local law. Mast v. Illinois Cent. R. Co., 8 Cir., 176 F.2d 157; Michigan Fire & Marine Ins. Co. v. National Surety Corporation, 8 Cir., 156 F.2d 329, 333; Central Nebraska Public Power and Irrigation Dist. v. Tobin Quarries, Inc., 8 Cir., 157 F.2d 482; Helvering v. Stuart, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154; MacGregor v. State Mutual Life Assurance Co., 315 U.S. 280, 62 S.Ct. 607, 86 L.Ed. 864. And if an uncertainty as to the meaning of the policy exists, since the insurance company prepared the policy, it is the rule generally that the meaning of the policy must be interpreted against the party who drew it. Morrison-Knudsen Co. v. Phoenix Ins. Co. of Hartford, Conn., 8 Cir., 172 F.2d 124, 127.

For the foregoing reasons the judgment appealed from is affirmed.

RIDDICK, Circuit Judge (dissenting).

In this case the burden was upon the plaintiff to prove that Hardy had the consent of his employer, Sturgis, for the actual use of the truck at the time of the accident. Reading the evidence in the light most favorable to plaintiff, I am unable to find any substantial evidence to support the verdict.

The insured, Sturgis, was engaged in the operation of a lumber mill near the town of Fordyce. In this business he used a fleet of 14 logging trucks for hauling logs from the woods to the mill. The route from the scene of the logging operations to the mill ran through the town of Fordyce. Hardy was employed as driver of one of the logging trucks hauling logs from the woods to the mill. Because of the shortage of equipment and labor caused by the war, Sturgis permitted his truck drivers on leaving the mill at the end of a day's

work to drive the trucks to their homes in Fordyce, to keep them there at night, and to leave Fordyce on the following morning for the place where logs were loaded for transportation to the mill. This arrangement saved the expense of providing transportation for the truck drivers between Fordyce and the mill at the end of a day's operations and at their beginning on the following morning. The arrangement added nothing to the mileage which the trucks traveled and did not increase their gasoline and oil consumption, important considerations as all who drove an automobile during the war well remember. On the evidence there is no room for doubt that this arrangement was a temporary expedient due to the shortage of manpower and equipment, and that it was a reasonable and economical one.

The particular truck involved in the accident out of which this litigation arose was a logging truck consisting of a tractor furnishing motive power and a trailer for carrying logs. Sturgis had succeeded in securing priority orders for three trucks that he needed in his business. He was able to get only this one new truck to which he assigned Hardy as driver. During the war, trucks, tires, and gasoline were rationed, and the supplies of all were short. The tractor itself was a six-wheel affair with two front and four rear wheels. It was not designed for the transportation of passengers. It was not intended for use as a pleasure vehicle. Its consumption of gas and tires was high.

The uncontradicted evidence is that all the truck drivers including Hardy were forbidden by Sturgis to drive any of the logging trucks except for the purpose of hauling logs and supplies to the mill. The order given the drivers required them to park the trucks at their homes when they returned with them from the mill at the close of work at Saturday noon or at 5 o'clock in the afternoon on other weekdays and to leave them there until they left to proceed with logging operations. The evidence also establishes the fact that in spite of positive orders to the contrary Hardy, on returning to his home at Fordyce, was in the

habit of detaching the tractor from the trailer and driving the tractor around Fordyce on errands of his own. Hardy testified that he drove the tractor about Fordyce whenever he wanted to drive it usually at night, on trips from the residence at which he roomed to restaurants serving negroes and places selling beer, all in Fordyce. Members of the Fordyce police force testified that frequently they saw Hardy driving the tractor, usually in the colored section of Fordyce and usually at night. Other witnesses on occasions had seen Hardy driving the tractor around Fordyce on Saturday afternoons and on rainy days when in their opinion logging operations were closed because of the weather. No witness testified that Sturgis had any knowledge of Hardy's use of the tractor in violation of his orders. As to this, the most that any witness said was that Sturgis could have seen Hardy driving the truck in the business section of Fordyce on one or two occasions when Hardy was not engaged in the business of his employer. Sturgis did not live in Fordyce. He spent the greater part of his time at the mill, although once or twice a week he spent the night at a hotel in Fordyce, and was in the city on business at other times. His trucks were serviced at a certain garage at Fordyce, and the operator of the garage was employed by Sturgis to keep an eye on the trucks and to report to him if any of his drivers were using them contrary to his orders. Sturgis himself occasionally visted the homes of his truck drivers to see if the trucks were parked where they were supposed to be, and when he discovered that one of the trucks was being used in violation of his orders he discharged the driver. On one occasion he found that the truck driven by Hardy was not parked at Hardy's residence, and upon investigation he found it at the garage where it was being serviced. He denied that he had any knowledge of Hardy's use of the truck in violation of his instructions.

The accident in which plaintiff was injured occurred about dark on a Saturday afternoon. On that afternoon Hardy had detached the tractor from the trailer and picked up a party of his friends and was en

route to a negro night club some distance from Fordyce on a beer drinking party. Sturgis had no knowledge of the actual use of the truck by Hardy on this trip, and as soon as he was advised of the accident Hardy was discharged.

On this evidence the jury was permitted to infer that Sturgis knew of Hardy's use of the truck in Fordyce in violation of his orders because others saw Hardy with the truck, and because Sturgis, had he kept a closer watch on Hardy's goings and comings, could have known of it. Having drawn this inference the jury was then permitted to draw the further inference that Sturgis consented to Hardy's use of the truck in Fordyce in violation of his orders; and, having drawn the inference that Sturgis consented to this use of the truck by Hardy, the jury was then permitted to draw from that inference the further inference that Hardy had the permission of Sturgis to take a party of his friends away from Fordyce several miles into the country on a beer drinking party; that is to say, from the fact that the truck driver violated his employer's instructions and used the truck when he was ordered not to use it, he therefore had the implied consent of the owner to use the truck for any purpose whatever at any time and place. All this is to read out of the policy of insurance the provision which relieved the insurer from liability unless Hardy had the permission of Sturgis for the actual use of the truck at the time of the accident, to place the burden of proof upon the insurer instead of upon the plaintiff, and to ignore the undisputed proof that Hardy's use of the truck at the time of the accident was a prohibited use. In my opinion far more evidence than can be found in this record is necessary to justify the inference of an implied consent to do not once or occasionally but continuously a prohibited act, an act prohibited not only by the express orders of the insured but doubtless by the regulations pertaining to the use of gasoline in motor vehicles during the war.

The judgment ought to be reversed for want of any substantial evidence to support the jury's verdict.