## JOHNSON *v.* JOHNSON.

### Opinion delivered November 30, 1914.

1.  HUSBAND AND WIFE—STOCK TAKEN IN WIFE'S NAME—PRESUMPTION.— Where appellant purchased stock in a building and loan association, and had the same transferred to the name of his wife, the presumption is, in the absence of evidence to the contrary, that any money that he furnished at the time of the purchase and transfer of the stock was intended by him as a gift or advancement to her.

2.  HUSBAND AND WIFE—PROPERTY TAKEN IN WIFE'S NAME—PRESUMPTION—HOW OVERCOME.—The presumption that where a man purchases property and places title in his wife's name, that he intends the same as a gift to her, is not conclusive; and it may be overcome by testimony of antecedent or contemporaneous declarations or circumstances.

3.  HUSBAND AND WIFE—PROPERTY TAKEN IN WIFE'S NAME—EVIDENCE—BURDEN OF PROOF.—When a husband purchased property in his wife's name, under the evidence, *held*, the burden of proof was on the husband to show that a gift was not intended, and, failing to discharge that burden, the property will be held to belong to the wife.

Appeal from Craighead Chancery Court, Western District; *Charles D. Frierson*, Chancellor; affirmed.

STATEMENT BY THE COURT.

On the 18th of August, 1913, the appellee instituted an action in the Craighead Circuit Court, for the Jonesboro District, against the Young Men's Building & Loan Association, and alleged that in the year 1902, the Young Men's Building & Loan Association issued to C. N. Carson forty shares of stock; that after he had made several payments in monthly dues, he assigned the shares of stock to Johnson Brothers, and about the year 1908, Johnson Brothers assigned and transferred the shares of stock to the appellee; that the stock matured on the 1st day of July, 1912, and that the building and loan association was indebted to her in the sum of $1,000, with interest thereon.

The association answered, admitting the maturity of the stock, and that the same had been transferred to the appellee; but alleged that Lee Johnson (appellant) claimed some interest in the matter, and asked that he be made a party. The court ordered Lee Johnson to be made a party, and also ordered the association to deposit the funds in court.

Lee Johnson answered, denying that Minnie Johnson was the owner of the stock, and alleging that he was the owner. He denied that the stock had been transferred to the appellee, and alleged that she was his wedded wife, and prayed that the case be transferred to equity, which was granted without objection.

The cause was, by consent, heard in vacation. The appellee testified that in February, 1908, she bought the stock, paying $400 for the same; that she drew a check for that amount upon the Bank of Jonesboro, and that her husband, the appellant, delivered the same to D. B. Johnson, his brother. She attaches a copy of the check in favor of D. B. Johnson in the sum of $400 drawn on the Bank of Jonesboro. The appellant acted as her agent in purchasing the stock, stating that the stock was a good investment. She inherited a small amount from her grandfather which, when added to the amount saved by her from her allowance given her by her husband for pin money, made the $400 which she paid for the stock. Her husband matured the stock after the purchase for her with the understanding that it was hers, and with the suggestion that if she bought the stock he would mature the same for her. It was understood between them at the time of the purchase that appellant would mature the same as a gift to her. The investment was made for her, with her money, and to be used as she wished at maturity of the stock. It was understood at the time that her husband would pay the dues if she used her money in buying the stock. The money representing the matured value of the stock was to be hers, and not shared by him nor used by them jointly. She stated that she gave her husband at one time a check for $100, and attached the check in

favor of R. L. Johnson for that amount, on the American Trust Company, dated November 2, 1910, which, by the indorsement thereon, shows that it was paid, and the money had never been repaid to her. The money with which she purchased the building and loan stock was her money. It was put in the Bank of Jonesboro by Lee Johnson for her. He knew at the time that the money was hers. He attended to her banking business for her. She used the American Trust Company in drawing out the money she had in it. Probably a portion of the money she had inherited from her grandfather was used in the purchase of the stock.

She attached as an exhibit to her deposition an account with the American Trust Company, of Jonesboro, Ark., showing a total deposit and interest from September 5, 1908, until March, 1911, of $341.61, and checks drawn in favor of various parties from May 15, 1909, to February 24, 1911, covering the full amount of her deposits. Among these checks was one in favor of R. L. Johnson for $100.

She also made an account with the Bank of Jonesboro, showing total deposits from December 12, 1904, to January 2, 1908, of $860, and exhibited checks, drawn from June 6, 1905, until March 30, 1909, for $860, and among these was a check payable to the order of D. B. Johnson, dated February 18, 1908, for $400. Among these cancelled checks were three in favor of Lee Johnson, aggregating $140.

A witness on behalf of appellant testified that during the years 1907, 1908 and 1909, he had remitted to appellee for money representing her interest in the estate of John Bailey $411.02. The remittances were: June 6, 1907, $165; September 1, 1908, $183.33, and November 29, 1909, $62.69.

The appellant testified that he purchased the stock in controversy from the firm of Johnson Brothers, composed of appellant and D. B. Johnson. Appellant paid D. B. Johnson $400 for the stock, and D. B. Johnson afterward credited appellant with $200 on the transaction. He

bought the stock in 1908, and paid for it with a check. The stock was matured in September, 1912. The certificate of stock was in his possession, but he was unable to find it. It had never been delivered to Mrs. Johnson. As far as he was able to determine, the stock was bought with his money. He deposited his money in the Bank of Jonesboro to the credit of Mrs. Johnson. It was his own money, and he had Mrs. Johnson to sign the check for it, and gave it to his brother. When asked how the money happened to be deposited in her name, he stated that he was a partner with D. B. Johnson, and they had a drawing account. He wished to prepare a sinking fund to take care of a home for himself and he deposited that money in the name of Mrs. Johnson for that purpose. He denied having an understanding with Mrs. Johnson that he was to mature the stock for her, and stated that he did not put the money in the bank for her as a gift. He stated that he had no knowledge that Mrs. Johnson was drawing checks against her account in the bank other than those he mentioned to her. He was very much surprised to know that the checks had been drawn by her as he had amply provided for her.

He stated, on cross examination, that his wife, the appellee, inherited some money, but that he didn't know the dates when she received it. The money was deposited with the American Trust Company, as near as he could remember. She gave him two checks out of that money. He was unable to say how much money he deposited to the credit of Mrs. Johnson in the American Trust Company or in the Bank of Jonesboro. The appellant did not have any individual account in the bank at the time appellee started her account. Stated that he did not remember whether he had an individual account with the Bank of Jonesboro between the years 1905 and 1910. He stated that he deposited money in the American Trust Company that belonged to him; that he had nothing to do with her estate. He did not know that his wife was using the money that she had deposited to pay family bills. He had an account

with the Bank of Jonesboro when he began to build his place, and collected insurance money in the name of Lee Johnson. Previous to that time the account was in the name of Mrs. Lee Johnson. He never drew any checks on the account of Minnie Johnson. If he needed any money she would sign the check. He did not think he ever told Mrs. Johnson that the stock had been transferred in her name. He deposited all the money in the Bank of Jonesboro in her name, unless she deposited some without his knowledge.

The appellee, in rebuttal, testified that Johnson knew she was using the money she deposited in her name as pin money, and to pay her other little indebtedness with, and made no objections to it. At the time he deposited the money for her he was giving her expense money for the house, and she lived within it and also saved some out of the money given her by him, which the appellee banked, and sometimes gave her more as a compliment on her saving.

It was stipulated that Lee Johnson did an individual banking business with the Bank of Jonesboro during the years 1907, 1908, 1909 and 1910, and that during that time he deposited $2,534.55. It was further stipulated that the appellant and the appellee were living apart at the date of the institution of the suit, and that the certificate of stock in the building and loan association was transferred to the appellee on the books of the association at the time appellee claims to have purchased it.

The court found that the stock was the sole and separate property of the appellee, and that the amount due on the stock from the building and loan association was $1,133.35, and rendered a judgment in her favor against the association for that sum. To reverse that judgment, appellant duly prosecutes this appeal.

*Gordon Frierson,* for appellant.

*Hawthorne & Hawthorne,* for appellee.

The burden was on the appellant to show that the money placed to the credit of his wife and used in the

purchase of the stock, and the subsequent dues paid by him, was his money, and was not intended as a gift or an advancement.

Advancements from husband to wife are presumed to be gifts. 36 Ark. 587; 47 Ark. 111; 73 Ark. 239; 98 Ark. 540. There are no contemporaneous declarations or circumstances tending to show that this stock was transferred to appellee for any other purpose than that it should be her property. 40 Ark. 62; 86 Ark. 446; 100 Ark. 37.

WOOD, J., (after stating the facts). (1) Even if appellant had furnished the money with which the building and loan stock in controversy was purchased, under the evidence he would not be entitled to claim the stock, for the proof shows that he had the stock transferred on the books of the company in the name of his wife. He positively asserts that this was done for his own benefit, while she as positively denies that it was so transferred. The presumption is, in the absence of evidence to the contrary, that any money that he furnished at the time of the purchase and transfer of the stock was intended by him as an advancement or gift to her. Very much the same contention as made by appellant here was made in the case of *Wood* v. *Wood*, 100 Ark. 372, where a husband purchased lands in part with his own funds, and took the deeds in the name of his wife. In that case we said: "As to the real estate in the name of the appellee, even if appellant purchased and paid for same in part with his own funds, since the deeds were taken in the name of his wife, and not in his own or their joint names, the presumption is that the money of his own thus used was intended by him as a gift to her. The law in such cases will not imply a promise or obligation on her part to refund the money or to divide the property purchased, or to hold the same in trust for him. His conduct will be referrable to his duty and affection, rather than to a desire to cover up his property or to any intention on his part to have her hold as trustee for him."

(2)   The presumption that when a man purchases property and takes the title in the name of his wife he intends the same as a gift to her is not a conclusive presumption. It may be overcome by testimony of antecedent or contemporaneous declarations or circumstances, as was said in *Della* v. *Della,* 98 Ark. 540. But there is no testimony of any antecedent or contemporaneous declarations of the appellant here at the time the purchase of the stock was consummated in the name of his wife to show that his intention was any other than to make her a gift of the stock; nor were there any declarations contemporaneous or antecedent to the various deposits that appellant claims to have made in the name of his wife, but for his own benefit, tending to show that such deposits were not intended as gifts to her. There were positive conflicts in the evidence as to who owned the $400 of the purchase money for the stock at the time the same was transferred on the books of the company in the name of appellee.

It could serve no useful purpose to discuss the evidence in detail. We are of the opinion that the appellee's testimony is more consistent and worthy of credit, when considered in connection with all the circumstances developed in proof, than that of the appellant. The facts set forth in the statement speak for themselves, and certainly it could not be said that the finding of the chancellor was clearly against the preponderance of the evidence.

(3)   Since the stock was transferred and appears on the books of the company in the name of appellee, the burden was upon appellant to show that the stock was not her property; hence, appellant must fail, even if it were correct to say that the testimony on the question of ownership was evenly balanced. But, as already stated, in our opinion the decided preponderance is in favor of the finding of the chancellor.

This is peculiarly a case where the finding of the chancellor should be treated as persuasive, and allowed to stand in the absence of proof clearly showing that his

finding was erroneous. The judgment is therefore affirmed.