# CASES DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS

## DAVENPORT v. GRAY.

### Opinion delivered January 29, 1923.

1. APPEAL AND ERROR—APPEAL FROM DIRECTED VERDICT.—On appeal from a judgment on a directed verdict, the court must give the testimony its strongest probative force in appellant's favor.

2. ACCORD AND SATISFACTION—JURY QUESTION.—Whether the amount of a physician's claim for professional services was disputed and whether there had been an accord and satisfaction in settlement thereof, *held* for the jury.

3. ACCORD AND SATISFACTION—WHAT CLAIMS MAY BE SETTLED.—All disputed claims, irrespective of their subject-matter, may be settled by a contract of accord and satisfaction, provided such contract is not tainted with fraud or illegality.

Appeal from Jackson Circuit Court; *Dene H. Coleman*, Judge; reversed.

*G. A. Hillhouse*, for appellant.

It is sufficient to support a settlement of this kind to show an actual controversy between the parties involving a question of doubt on both sides, and that at the time of the agreed settlement there was a compromise fairly and deliberately made. 12 C. J. 334. The evidence raised a disputed question of fact here which ought to have been submitted to the jury. 103 Ark. 61; 107 Ark. 487.

*Fred M. Pickens*, for appellee.

The court properly directed the verdict. The claim was undisputed. An accord and satisfaction of an undisputed claim must be supported by a new or additional consideration. 1 R. C. L. 179, 183; 75 Ark. 354; 88 Ark. 476; 2 Ark. 45; 70 Ark. 220. Part payment is no con-

sideration for the release of a debt already due. 54 Ark. 185; 55 Ark. 369. See also 40 Ark. 180; 44 Ark. 349,

Wood, J. This is an action by the appellee against the appellant to recover on an account for professional services alleged to have been rendered by the appellee to the appellant, for which the appellee asked judgment. The appellee testified that the appellant was indebted to him in the sum of $216. He exhibited an account which was taken from his books. He stated that the sum of $24 had been paid on the account. The appellee stated that he never made any agreement with the appellant to reduce the account to the sum of $24, and denied that he ever made a statement to the appellant or to any one else that he agreed to reduce the account to $24. He mailed the appellant a statement of the account showing the number of visits charged for, amounting in the aggregate to $240, which was credited by check for $24, leaving a balance due of $216. The account was exhibited to the jury. The appellee stated that the account was correct, and was past due and unpaid. On cross-examination the appellee identified a statement which had been rendered to the appellant by the appellee. which statement is as follows:

"Statement.

"Dr. C. R. Gray.

"Newport, Arkansas, Sept. 28, 1921.

"Professional Services Rendered to.................................$24.00
Amount paid

--------

 Balance ................................................................................$24.00

"To Will Davenport

"Newport No. 1"

Appellee also identified a similar statement dated October 12th.

Appellee also exhibited a check which had been given to him by the appellant for the sum of $24, which check and statement were introduced in evidence. Appellee testified that the statements showing the account as $24

were due to an error made by the girl who worked in his office and who mailed out the statements for him. The statements should have been for $240 instead of $24. The correct amount of $240 is shown by his books. Appellee did not supervise the sending out of the statements, but told the young lady working in his office to send them out.

Miss Blanche Heebes testified that she was working in the appellee's office in September and October, and that she mailed out the statements of the accounts which had been exhibited and introduced in evidence. The appellee never instructed her to mail a statement to the appellant for the sum of $24. Appellee was sick from the 29th of September until some time in December. The statements sent out by her showing the amount of appellant's account to be $24 was a mistake made by witness. The amount of the account, as shown by appellee's ledger, was $240, and the ledger showed a credit of $24. The appellee was permitted to exhibit the ledger to the jury.

The appellant testified that the appellee had visited appellant's wife during her illness, and that appellant discharged him from the case. Afterwards the appellant met the appellee on the road and asked the appellee what kind of a bill he had against the appellant. The appellant told appellee that he had called him to wait on his wife, and with proper attention she would not have had the long spell of sickness. Appellee at that time told the appellant to send appellee $24 in settlement of the account, $20 being for the initial treatment of appellant's wife and $4 for a previous trip. Appellant told appellee to send him a statement. Appellant received a statement on September 28th for $24, and subsequently received two more statements showing a similar amount to be due. When he received the statement on October 12th he mailed appellee a check for $24. Appellant never received a statement showing $240 to be due. Appellee came to appellant's house and had a conversation in regard to the matter shortly before suit was filed, which

was after appellant had sent the appellee his check for the amount of the account rendered.

On cross-examination, appellant testified that before his wife got sick he owed the appellee $4. Appellant discharged the appellee on the 4th of February. Appellee came to visit appellant's wife about the 29th of December and visited her twice a day until appellant stopped it. Appellant had told appellee the reasons he objected to paying more than $24, and appellee agreed to accept $24 in settlement of his bill. Appellant had told appellee that he had not treated appellant's wife properly, and that appellee's conduct was ridiculous. The appellee said that he had not done anything wrong. Appellant told him some of the things that he had done wrong, and thereupon appellee stated that he didn't know that appellant was dissatisfied, and asked appellant to send him $24 and let it go. Appellant then told appellee that he didn't pay his bills until he got a statement, and asked appellee to send him a statement of the account agreed upon. Appellant got a statement, and mailed a check to appellee after the last statement was received.

Two witnesses testified to the effect that they had seen the appellant and appellee engaged in conversation about the time and place mentioned by the appellant as the time and place the conversation took place between him and the appellee concerning the agreement for settlement of the account.

Appellee testified that his visits for which he charged the appellant were when he was sent for by the appellant, or in response to a call over the telephone.

The court gave the jury the following instruction: "The plaintiff in this suit seeks to recover from the defendant upon an account which has been verified by the evidence in this case, and the amount of it undisputed, the correctness of the account undisputed. Under the law in this case, it becomes my duty to instruct you to return a verdict for the plaintiff for the amount of the account, $216 with interest." The appellant duly objected and ex-

cepted to the ruling of the court. The jury returned a verdict, as directed, for the sum of $216. Judgment was entered for that sum with interest, from which is this appeal.

The court erred in instructing the jury to return a verdict in favor of the appellee. We must give the testimony its strongest probative force in favor of the appellant. When this is done, it occurs to us that, under the testimony, it was an issue of fact for the jury to determine as to whether or not the claim of the appellee against the appellant was disputed. If the jury found that the claim was disputed, it was also an issue for the jury as to whether or not there had been an accord and satisfaction. "All disputed claims, irrespective of their subject-matter, may be settled by a contract of accord and satisfaction, provided such contract is not tainted with fraud or illegality." 1 R. C. L. p. 179, sec. 4; 12 C. J. 334, sec. 24, and cases there cited in note 4; see especially *Harris* v. *Henderson,* 100 A. S. R. p. 386, note at p. 409 *et seq.* These issues should have been submitted to the jury under instructions applicable thereto. The court therefore erred in telling the jury, as a matter of law, that the amount of the appellee's account against the appellant was undisputed.

The judgment is reversed, and the cause remanded for a new trial.