Shaul *v.* Katzenstein.

Opinion delivered February 14, 1927.

1. Appeal and error—directed verdict—presumption.—When there has been a directed verdict, the evidence must be viewed in the light most favorable to the unsuccessful party.

2. Descent and distribution—presumption of advancement.—Where decedent furnished the money to pay for property, and took the conveyance or title to his child or wife, in the absence of evidence to the contrary, it will be presumed that 'the purchase of the property was intended as a gift or advancement.

3. Evidence—nature of presumption.—A presumption is merely an inference as to the existence of one fact from the known or proved existence of some other fact, founded on a rule or policy of the law.

4. Descent and distribution—presumption of advancement.—The presumption that money furnished by a father for property, of which the title was taken to his child, was intended as a gift or advancement may be rebutted.

5. Descent and distribution—presumption of advancement.—The contention that a gift or advancement was intended by a father in taking a deed to land to his daughter was inconsistent with a plea that the daughter had paid for the property, in an action by an executrix to recover such purchase money.

Appeal from Lee Circuit Court; *E. D. Robertson,* Judge; reversed.

*Mann & Mann,* for appellant.

*R. D. Smith* and *W. G. Dinning,* for appellee.

Mehaffy, J. Plaintiffs filed complaint in the Lee Circuit Court, alleging that Mrs. Louisa Shaul was executrix of the estate of Jake Shaul, also his widow, and that the other plaintiffs were children and next of kin; that, in October, 1923, defendants became indebted to Jake Shaul for money borrowed in the sum of $4,476, evidenced by check exhibited; that, in January, 1925, defend-

ants paid on said indebtedness the sum of $1,000, leaving a balance due of $3,476; and that Jake Shaul died testate in February, 1925.

Defendants answered, denying that they became indebted to Jake Shaul for money borrowed for sum mentioned, or any other sum, and denied that they paid $1,000 on indebtedness, but alleged that J. B. Katzenstein paid Jake Shaul a thousand dollars in complete and full satisfaction of any and all claim or indebtedness owing by either defendant herein to the said Jake Shaul, and denied they were indebted to plaintiff in any sum.

Witness Robinson testified that he was engaged in the banking business, and identified the check, and stated that it was given in payment of a note that Mr. Shaul gave to the bank; that a piece of property was purchased from Friedman, and that Shaul made the note for it, and that the note was made in December and a check given to take up the note. Witness did not know, but it was his understanding that the property that Mr. Shaul was buying, he was buying for them; that, at the time, Friedman owed them the amount, or approximately the amount, for which they held the mortgage, and that the Shaul note was given in substitution of the Friedman note; that the check was paid by the Marianna bank; that Mr. and Mrs. Katzenstein lived on the property after that, and are now residing on the property, and have been ever since the check was given (check was then introduced in evidence); that Mr. Friedman owed the bank, and that Katzenstein had made a deal with Friedman, and talked to witness about it. "The only fact I know is that Shaul gave the bank a note which was accepted as part payment of indebtedness to bank by Mr. Friedman. As I recall now, Katzenstein moved into the property about the time of the transaction. Note was a lien on the property and was taken up by the check of Mr. Shaul."

Lee Shaul testified that Katzenstein was in possession of the property; that his father paid the Lee County Bank for the Katzensteins; that he knew the check introduced was the check paid for the transaction; that his

sister has title to the property, and it was the same property testified about by Mr. Robinson; that the note was in his father's vault-box, and that, after his father died, Katzenstein had the key, and the note disappeared; the note was in there, and Mr. Katzenstein had access to it later, and that he was the only one who had the keys after witness' father took sick. "The note he speaks of was one my father gave to the Lee County Bank to take up the Katzenstein note, the amount my sister and Mr. Katzenstein owed the bank. The note was in the vault in the Bank of Marianna." Witness did not have access to the vault; his father took sick at the home of Mr. Katzenstein; he had some money on him, and Mr. Katzenstein took the money and the keys. "I have a box of my own; after my father died we had to demand the keys of Mr. Katzenstein before we could get to the will."

Mr. Lee Mixon identified the check, and testified that it was paid. This was all the testimony, and the court then directed a verdict for the defendants.

The evidence in this case was not very strong, but the testimony of the witnesses, together with all the circumstances in the case, were, we think, sufficient to justify the court in submitting it to the jury. This court has many times held that not only questions of fact are to be determined by jury, but, when there is a directed verdict, the evidence must be viewed in the light most favorable to the unsuccessful party.

The undisputed proof was that Shaul gave this note in payment of the indebtedness of Friedman; that Friedman's indebtedness was a lien on the land; that Shaul afterwards paid this note with his check, and that the title was made to the Katzensteins, and that they are now living on it. It is also uncontradicted that this note was kept in Shaul's box in the bank; that he took sick at Katzenstein's home, and that Katzenstein took his money and his keys to the box, and that the note disappeared.

Defendants, in their answer, denied the indebtedness sued on, but stated that they paid Shaul $1,000 and that this was payment of all claims and indebtedness. If they

paid this $1,000, and it was in payment of indebtedness, then certainly they were indebted to Shaul, or they would not have paid him $1,000.

From the evidence and pleadings the jury might have found that the money that Shaul paid for the place the Katzensteins lived on was a loan of money to Katzenstein and the payment of $1,000 was a payment on this indebtedness. At any rate, there was sufficient evidence to require the submission of the case to the jury, and the court therefore erred in instructing the jury to render a verdict in favor of the defendant. This court has recently said:

"We must give the testimony its strongest probative force in favor of the appellant. When this is done, it occurs to us that, under the testimony, it was an issue of fact for the jury to determine as to whether or not the claim of the appellee against the appellant was disputed. If the jury found that the claim was disputed it was also an issue for the jury as to whether or not there had been an accord and satisfaction." *Davenport* v. *Gray*, 157 Ark. 1, 247 S. W. 81.

It has been said recently by this court that, in determining the sufficiency of evidence to support a verdict against a defendant, the Supreme Court will view the testimony in the light most favorable to plaintiffs and give it such force as the jury might have given it. *St. L. S. F. R. Co.* v. *Whitfield*, 155 Ark. 560, 245 S. W. 323.

It is contended by the appellee that, even if it were admitted that the funds in question were expended by Mr. Shaul for the purpose of purchasing the property for his daughter, even then it must be presumed that the father intended this as a gift, or at least as an advancement. Appellee calls attention to the case of *Wood* v. *Wood*, 116 Ark. 142, 172 S. W. 868, and the case of *Johnson* v. *Johnson*, 115 Ark. 416, 171 S. W. 475. These cases and many other Arkansas cases hold that, where the father furnishes the money to pay for property, and the conveyance or title is made to the child or wife, in the absence of evidence to the contrary, the money that he

furnished at the time for the purchase of the property will be held as intended by him as a gift or advancement.

It is stated in the 115 Arkansas case cited: "The law in such cases will not imply a promise or obligation on her part to refund the money or to divide the property purchased, or to hold the same in trust for him. His conduct will be referable to his duty and affection, rather than to a desire to cover up his property or to any intention on his part to have her hold as trustee for him. The presumption that, when a man purchases property and takes the title in the name of his wife, he intends the same as a gift to her, is not a conclusive presumption. It may be overcome by testimony of antecedent or contemporaneous declarations or circumstances." *Johnson* v. *Johnson,* 115 Ark. 416, 171 S. W. 475.

A presumption is merely an inference as to the existence of one fact from the known or proved existence of some other fact, founded on a rule or policy of the law, and presumption in cases like this may always be rebutted; but this case was not tried in the court below on any theory that there was a gift or advancement. We think the pleading of the defendant itself contradicts any idea of gift or advancement.

If the defendants had answered that the father paid the money but that it was a gift or advancement, there would have been a presumption which the plaintiffs, in order to recover, would have had to overcome by evidence, but the defendants not only did not file an answer of this kind, but they admitted that there had been an indebtedness by pleading payment. A plea of payment, of course, can mean nothing else but that there was a debt to pay. They denied, of course, that they owed this indebtedness, but they answered the statement in plaintiff's complaint as to the $1,000 by stating that they had paid to the said Jake Shaul $1,000, which was in full and complete satisfaction of any and all claim or indebtedness owing by either defendant to the said Jake Shaul. It would be unreasonable and contradictory to say that they paid $1,000 in full and complete satisfaction of all claim or

indebtedness owing to the defendant, when they in fact did not owe him anything. It may be that they owed him some other money, or because of some other transaction, but their answer certainly shows that they were indebted to him, and paid him $1,000.

We think other circumstances which were testified to in the case contradicted the idea that there was a gift or an advancement. These circumstances alone might not overcome the presumption of law, but, when you consider them together with the answer of the defendant, which admitted indebtedness and claimed payment, we think this contradicts the idea of a presumption that it was a gift or advancement.

The court therefore erred in directing a verdict for the defendants, and the case is reversed, and remanded for a new trial.