PHILLIP T. WHITEAKER, Judge
This appeal arises out of a dispute over the dissolution of a partnership between the appellant, Patricia Fudge, and the appellee, Eddie Parks. Fudge, in essence, claimed that Parks failed to properly account for partnership assets, misappropriated partnership funds and assets, breached his fiduciary duties, and improperly kept the proceeds from the sale of her personal vehicle. The Baxter County Circuit Court entered an order granting Fudge a judgment against Parks for the sale of her vehicle but denying Fudge relief on all other claims. On direct appeal, Fudge appeals the amount of damages awarded by the court as well as the court's denial of her other claims. On cross-appeal, Parks appeals the judgment entered against him. We affirm on both direct and cross-appeal.
In 2006, the parties entered into a partnership agreement for a cattle operation. Fudge was to contribute financially to the venture, while Parks, who was familiar with cattle farming, was to manage the operation. The relationship ultimately soured, and in 2015, the partnership was dissolved. Both Fudge and Parks signed a dissolution agreement that stated that the agreement constituted a "full and complete settlement of all issues, rights, claims or demands that each has against the other concerning the partnership known as 2 Bar P Farms" and that each party would completely release each other from "any claim, demand or liability derived from the operation of 2 Bar P Farms."
Despite signing the dissolution agreement, Fudge filed a complaint against Parks in the Baxter County Circuit Court[1] alleging that Parks had fraudulently concealed some of the assets of the partnership prior to the signing of the dissolution agreement and that she had discovered his *726 misappropriation of partnership property and assets after the dissolution agreement had been executed. She requested a reimbursement of at least $ 15,000. She further alleged that Parks had prevented the return of several items of her personal property[2] and had sold her vintage 1967 Chevrolet Chevelle without her knowledge. She requested the return of those items as well as damages for the value of the car she alleged was worth $ 38,000. Finally, she requested reimbursement for the out-of-pocket expenses she incurred in conducting the investigation into Parks's fraudulent actions and misdeeds and her costs and attorney's fees.
Parks answered the complaint, denying the allegations. He further asserted that Fudge's claims were barred by the dissolution agreement, that her claims were frivolous and brought for the purposes of harassment, and that he was entitled to attorney's fees and costs.
Fudge subsequently amended her complaint to include allegations that Parks had received funds from the 2012 Livestock Forage Disaster Program and the 2012 Noninsured Crop Disaster Assistance Program that she maintained should have been paid to the partnership. As to this claim, she requested $ 11,380 in compensatory damages and $ 25,000 in punitive damages.
Parks again answered the complaint, denying the allegations and alleging that her claims were barred by the dissolution agreement.
The circuit court conducted a bench trial at which both Fudge and Parks presented their evidence. The evidence focused on four areas of disagreement: (1) disputed checks made on the partnership account; (2) the receipt of USDA funds; (3) the sale of cattle at dissolution; and (4) the sale of the 1967 Chevrolet Chevelle. After the hearing, the trial court entered an order denying Fudge's claims with respect to the disputed checks but granting her claim as to the sale of the Chevelle. On that claim, the court ordered Parks to pay Fudge $ 16,000. An amended order resolved the remaining issues by denying Fudge's claims as to the USDA funds and her claims of fraud and punitive damages. She appeals the trial court's denial of her claims, and Parks cross-appeals the judgment entered against him.
I. Standard of Review
Generally stated, our standard of review following a bench trial is whether the trial court's findings are clearly erroneous or clearly against the preponderance of the evidence. Bohannon v. Robinson , 2014 Ark. 458, 447 S.W.3d 585. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id. Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder. Id.
II. Issues and Arguments on Appeal
The alleged error in this appeal can be divided into four distinct categories: (1) the court's order regarding the disputed checks written by Parks off the partnership account; (2) the court's order regarding USDA funds Parks deposited into his personal, rather than partnership, account; (3) the court's order regarding the sale of partnership cattle; and (4) the court's *727 award of damages for the sale of the 1967 Chevelle.
Regarding the first three issues, Fudge argues that the trial court erred by not requiring Parks to provide a full accounting, including evidence of expenditures and proof of nonappropriation of partnership assets. She contends that as a fiduciary, it was Parks's burden to provide a full accounting of his actions and to prove that his actions did not amount to self-dealing. Accordingly, the court should have compelled Parks to account for misappropriation (i.e., disputed checks and USDA funds) and for the sale of the cattle on dissolution. She contends that the court did not hold Parks to his burden of proof; instead, the court effectively and erroneously resolved all partnership-related issues in the case by reference to the dissolution agreement. She argues that a remand is required for a full partnership accounting.
Concerning the fourth issue, Fudge argues that the trial court erred in not awarding her full damages regarding the sale of the 1967 Chevelle. Parks also challenges the trial court's award of damages with respect to the Chevelle. He contends that he proved an ownership interest in the car and that the court erred in the judgment amount awarded to Fudge.
III. Analysis
A. The Disputed Checks
The circuit court heard evidence related to several disputed checks paid on the partnership account. These included, among others, checks made payable to Parks, his wife, and others for such items as fertilizer, a lawn mower, and firearms. Fudge claimed that these checks were not proper partnership expenditures and that she did not have copies or knowledge of the checks prior to dissolution. In response, Parks testified that most of the disputed checks were either reimbursements for personal expenditures made on behalf of the partnership or were partnership related. Of those that were not partnership related, he claimed he reimbursed the partnership. He also disputed that Fudge had no knowledge of these checks prior to dissolution. He contended that during the partnership, Fudge was the partner who received the banks statements with copies of the canceled checks attached.
The trial court found that Fudge failed in her burden of proving that the disputed transactions were either illegal or improper and that she should be reimbursed for them. The court also found that the dissolution agreement clearly resolved the claims. Fudge claims that Parks, as a fiduciary, owed a duty to account for the transactions and therefore bore the burden of proving that the transactions were not the result self-dealing. Her argument fails in several respects.
First, the trial court was presented with sufficient evidence from which to conclude that Parks did not engage in self-dealing. The court heard conflicting evidence concerning the nature of the checks written, whether the checks pertained to personal or partnership interests, and whether appropriate reimbursements were made. The court weighed the conflicting evidence and found that Fudge had failed to prove that these transactions were improper. It is within the sole province of the fact-finder to weigh credibility and resolve disputed facts. Simmons v. Dixon , 96 Ark. App. 260, 267, 240 S.W.3d 608, 613 (2006). To reverse on this basis would be to require this court to act as a super fact-finder or to second-guess the trial court's credibility determination, which is not our function. Based on the evidence presented, *728 we are not left with a firm conviction that a mistake was made.
More significantly, we note that the disputed checks were written on the partnership account and constitute partnership assets; therefore, absent fraud, they are governed by the provisions of the dissolution agreement. A settlement, accord and satisfaction, or release may be set aside for fraud. See Creswell v. Keith , 233 Ark. 407, 344 S.W.2d 854 (1961) ; Burke v. Downing Co. , 198 Ark. 405, 129 S.W.2d 946 (1939) ; Davenport v. Gray , 157 Ark. 1, 247 S.W. 81 (1923). Fraud must be proved by showing that (1) the defendant made a false, material representation (ordinarily of fact); (2) the defendant had knowledge that the representation was false or the defendant asserted a fact that he or she did not know to be true; (3) the defendant intended for the plaintiff to act on the representation; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff was damaged as the result of such reliance. See Malakul v. Altech Ark., Inc. , 298 Ark. 246, 766 S.W.2d 433 (1989). Fraud is never presumed but must be affirmatively proved, and the burden of proving it is on the party who alleges it. Ouachita Elec. Coop. Corp. v. Evans-St. Clair , 12 Ark. App. 171, 672 S.W.2d 660 (1984). Thus, the burden was on Fudge to prove that Parks committed fraud. The trial court found that she failed in her burden of proof. That finding is not clearly erroneous.
Here, the trial court specifically found that although Fudge did not actively participate in the day to day activities of the farm, she did receive all the bank statements and financial records pertaining to the business. The court's finding in this regard is supported by the evidence. The bank statements containing the disputed transactions were admitted into evidence. Those bank statements were addressed to Fudge at her mailing address. They contained copies of the canceled checks written on the account. Thus, Fudge knew or should have known of the disputed financial transactions prior to entering into the dissolution agreement. As these documents were readily available to her, there was no fraudulent concealment, and the dissolution agreement stands. While Fudge testified that she never received the statements until after the dissolution agreement was signed and when she requested them from the bank, the trial court was not required to believe her testimony in this regard. For us to find otherwise would result in an improper reweighing of the evidence.
Here, the trial court essentially determined that because Fudge had failed to prove fraud, the dissolution agreement controlled. The parties in this case entered into a dissolution agreement, resolving all claims the parties may have to the partnership and each other. In fact, the parties agreed that the dissolution agreement constituted a "full and complete settlement of all issues, rights, claims or demands that each has against the other concerning the partnership known as 2 Bar P Farms." The dissolution agreement further stated that upon the signing of the agreement, the partnership known as 2 Bar P Farms would fully and completely be dissolved with no assets remaining and that each party would completely release each other from "any claim, demand or liability derived from the operation of 2 Bar P Farms." These disputed checks occurred well before the dissolution of the partnership and the entry of the dissolution agreement. Thus, the court determined that the dissolution agreement, absent more, controlled. We agree and find no error in the court's ruling on this issue.
B. The USDA Funds
Fudge next claims that the trial court erred in failing to find that Parks *729 breached his fiduciary duty by depositing USDA funds into his personal, rather than partnership, account. Like the disputed checks, the court heard conflicting testimony concerning these funds. Parks received two checks, one for $ 7810 from the Livestock Forage Disaster Program and one for $ 3570 from the Noninsured Crop Disaster Assistance Program. He deposited these funds into his own personal account and not into the partnership account. Parks testified that he placed the money in his personal account because (1) he paid the fees out of his personal account and (2) the program was tied to the land, not the cattle, and the partnership did not own the land. Fudge testified that the program funds were related to the number of cattle owned by the partnership, and she denied any knowledge of the payments until after dissolution. The court found Parks's explanation of the USDA program and payments more credible than Fudge's. As stated earlier, disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder. Simmons, supra. Again, the trial court's decision is not clearly erroneous; thus, we find no error in the court's ruling on this issue.
C. The Cattle Sales
Fudge next contends that Parks manipulated the sale of the cattle on dissolution by splitting the herd in half and selling them separately instead of selling the cattle and dividing the proceeds fifty-fifty. By doing this, Fudge claims that it was clear that Parks had engaged in "veiled transactions" and self-dealing with regard to the sale of the cattle. Again, Fudge failed in her burden of proof. Patty Donalee of Gainesville Livestock Auction testified at the hearing about the sale of the cattle from the partnership dissolution. She testified that she only sold cattle for Fudge in October 2014. This sale would have been the sale of Fudge's one-half of the herd upon dissolution. Donalee brought records with her concerning the sale in question. She could have been questioned about the price of cattle obtained upon the sale of Fudge's one-half of the herd and the price of cattle obtained upon the subsequent sale of Parks's one-half of the herd.[3] Neither Parks nor Fudge asked Donalee the price for which the cattle were sold. Although Fudge claims Parks engaged in self-dealing, she failed to offer any evidence that his method of dividing the cattle was in any way improper or resulted in an unfair advantage. Fudge simply failed in her burden of proving fraud, improper dealing, or breach of fiduciary duty. Moreover, once again, the cattle sales occurred prior to the parties' entry into the dissolution agreement. Thus, absent a showing of fraud, the agreement controls, preventing Fudge's claims in this regard. We find no error in the court's ruling on this issue.
D. The 1967 Chevrolet Chevelle
The last disputed item pertains to the proceeds from the sale of a 1967 Chevrolet Chevelle. The Chevelle was purchased in 2010 for $ 18,000, but both parties agree it was not an asset of the partnership. Without dispute, Fudge paid the purchase price out of her personal funds, but Parks was the person who made the purchase.[4] Despite using her own funds to pay the purchase price, Fudge signed the registration as the owner of the vehicle, and the Chevelle was registered and titled *730 to "Eddie Parks or Patricia Fudge." After the purchase, Fudge maintained the title and registration and paid the insurance and taxes. The Chevelle was stored in a garage on Parks's farm.
When the partnership began to unravel, Fudge instructed Parks to sell the Chevelle. Parks claims he sold the vehicle for $ 18,000 and used $ 12,000 of those funds to purchase a "farm truck," deposited $ 4,000 into the partnership account, and gave the remaining $ 2,000 to Fudge. Fudge stated she thought the vehicle sold for $ 18,500 and claimed she never received any money from the sale.
Based on this evidence, the court found that the vehicle had been purchased exclusively with Fudge's private assets; that Parks had no ownership interest in the vehicle; and that Parks had no right to use those funds to purchase a farm truck or to deposit the funds into the partnership account. The court then imposed a constructive trust on the $ 16,000 not returned to Fudge. Both parties disagree with the trial court's disposition as it relates to the 1967 Chevrolet Chevelle.
Fudge argues that she never received any money for the sale of the Chevelle and disagrees with the court's award of judgment in the amount of $ 16,000. Parks asserts that he was a part owner in the Chevelle and received nothing for his interest. At the very least, he argues that he is entitled to some offset for the amounts placed in the partnership account that was split equally between the parties on dissolution and for which the court did not give him any credit.
Based on the evidence before us, we are not left with a definite and firm conviction that a mistake has been made. We disagree with Fudge's contentions that the trial court erred. There was clearly evidence presented that the vehicle was purchased from Fudge's individual funds, that the vehicle was sold for $ 18,000, and that Parks gave Fudge $ 2,000 of those funds. Although Fudge disputes receiving the $ 2,000, the court weighed the evidence in favor of Parks.
We also disagree with Parks's contentions that the trial court erred. Granted, the Chevelle was titled in the name of both Fudge and Parks. However, the fact that the car was titled in both names is not conclusive of ownership; a certificate of title is only some evidence of ownership, and a vehicle registered to one person may be shown to be owned by another. See Akins v. Pierce , 263 Ark. 15, 563 S.W.2d 406 (1978) ; Robinson v. Martin , 231 Ark. 43, 328 S.W.2d 260 (1959). There was conflicting evidence presented as to whether Fudge intended to gift Parks an ownership interest in the car. The trial court weighed the evidence and resolved the ownership issue in Fudge's favor.
Likewise, we disagree with Parks that the court erred in not awarding any offset in relation to the $ 4,000 from the sale allegedly deposited into the partnership account. We note that Parks failed to provide any documentation of this deposit into the partnership bank accounts. While the court credited his testimony with regard to the $ 2,000 he paid to Fudge, the trial court was not required to credit the rest of his testimony. As the trier of fact, the trial court was entitled to accept or reject all the testimony or any part thereof that it believed to be true or false. Wal-Mart Stores, Inc. v. Thomas , 76 Ark. App. 33, 61 S.W.3d 844 (2001) ; White v. State , 39 Ark. App. 52, 837 S.W.2d 479 (1992). Given the state of the evidence before us and the deference accorded the trial court in determining the credibility of the witnesses and the weight to be given *731 their testimony, we affirm on this point as well.
Affirmed on direct appeal; affirmed on cross-appeal.
Harrison and Murphy, JJ., agree.

The complaint was filed on September 9, 2016, almost eighteen months after the execution of the dissolution agreement.

The court ordered these items to be returned to her, and these items are not a part of this appeal.

There was some discussion that Fudge received more than $ 20,000 for her share of the cattle, but there was no testimony on how much Parks received for his.

The bill of sale showed a lower purchase price of $ 15,000. This was supposedly done to achieve a lower sales tax.